IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| JOSE RUBEN DELEON, | ) | No. C 11-02121 EJD (PR) |
| Petitioner, | ) ) | **ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS; DENYING CERTIFICATE OF APPEALABILITY** |
| vs. | ) ) ) | |
| M.D. MCDONALD, Warden, | ) ) | |
| Respondent. | ) ) ) | |

Petitioner has filed a pro se Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254 challenging a judgment of conviction from San Mateo County Superior Court. For the reasons set forth below, the Petition for a Writ of Habeas Corpus is **DENIED**.

**PROCEDURAL BACKGROUND**

On February 26, 2009, a jury found Petitioner guilty of first degree burglary and petty theft with a prior conviction for receiving stolen property. Resp. at 1. On May 1, 2009, the trial court sentenced Petitioner to a term of eighteen years in state prison. Pet. at 2.

On July 15, 2010, the state appellate court affirmed the judgment. Pet., Ex. 1. On September 22, 2010, the California Supreme Court denied review. Resp. Ex. 8.

Order Denying Petitioner for Writ of Habeas Corpus; Denying Certificate of Appealability
G:\PRO-SE\SJ.EJD\HC.11\02121DeLeon_deny petition-coa.wpd

Petitioner filed this instant petition for a writ of habeas corpus on April 29, 2011.

## DISCUSSION

A.   Factual Background

The facts of Petitioner's underlying offenses were summarized in the state appellate court's opinion:

> Monique Topp testified that on April 28, 2008, at about 2:45 a.m., she was sleeping with her one-year-old daughter in the front upstairs bedroom of her two-story townhouse apartment located in a townhouse apartment complex called the Franciscan Apartments (the Franciscan Apartments). Her husband was sleeping in the back upstairs bedroom with their four-year-old son. Topp woke up "to a fair amount of noise" that "sounded a lot like something was banging on the floor or just a lot of commotion was going on." "It was hard to say exactly where [the noise] was coming from" but it "[s]ounded like it was coming from downstairs." She thought her husband was up and she "was fairly angry that he was going to wake up [the] whole family making so much noise." She went to the top of the stairs to see what was going on and found her husband there. Seeing each other there, they realized someone else was in their home and panicked. She saw a red glow in the front entrance area that was "perhaps a flashlight," but the area was otherwise "completely black" and she could not "see a shadow or anything else of a human being." Her husband grabbed a heavy model train and yelled something like, "get out." She heard "a sudden movement at the door" as the person tried to open the front door but was unable to because of the chain lock. She then heard the person take the chain lock off and leave.
>
> Once they thought the person was gone, Topp and her husband went downstairs and called the police. Topp noticed the bathroom window was "wide open." She had opened the window about half way that day but had "definitely closed" it, although she had not locked it because the lock was "a little bit unpredictable." All of the other windows in the house were still closed and locked. Various items that were previously on the bathroom windowsill had fallen onto the bathroom floor. Topp testified that although it would be difficult, a person could fit through the bathroom window.
>
> Upon looking around, Topp discovered that her laptop computer, which she purchased about eight months before the burglary for about $600, was missing from a desk in the living room. Topp testified she usually closes the blinds on the living room window but had not closed them that day. A person looking through the living room window could see the light from the computer monitor. Topp testified that the day after the incident, she noticed the screens on both the living room and bathroom windows had been taken off and were on the ground outside the

Order Denying Petitioner for Writ of Habeas Corpus; Denying Certificate of Appealability
G:\PRO-SE\SJ.EJD\HC.11\02121DeLeon_deny petition-coa.wpd

windows. She had taken off the screen to the living room window a few days before the incident to let a bee out but had reattached it. Before she went to bed on April 27, 2008, the screens on both the bathroom and living room windows were attached.

Topp testified that outside of her bathroom window between her house and other town houses, there is a walkway on which people often travel. She had never seen or met appellant, had never invited him into her home and had never asked him to work at her home. There was no reason he would be at her living room or bathroom window. She had no window cleaning service and had never cleaned the windows from the outside.

Foster City Police Officer William Beck testified he was on duty at about 2:50 a.m. on April 28, 2008, and went to the Franciscan Apartments in response to a report of a residential burglary. When he arrived at the victims' apartment, he noticed the front door was open. The bathroom window was also open and a screen was on the ground. Another window "some ways down" was closed but the screen of that window was also on the ground. Beck testified the bathroom window was large enough for him to fit through it, although "[p]robably" not if he was wearing his "gear." Beck examined the bathroom and living room windows for fingerprints and lifted a total of eight prints. One of the prints was taken from the exterior of the bathroom window and the remaining prints were taken from the exterior of the living room window. Beck testified the print he collected from the bathroom window came from the center-right portion of the left window pane as viewed from the outside. [FN2] He testified the four prints he collected from the living room window likewise came from the left pane of the window as viewed from the outside. Each of the prints he collected was found "on the sliding part of the window." Beck also took "elimination prints" from Topp and her husband, which are "sample[s] of the resident[s'] prints so they can be eliminated" if they match the collected prints.

> FN2. Two of the exhibits are photographs of the bathroom window. They show the window is composed of two panes and that when viewed from the outside, the left pane is the sliding pane that opens.

San Mateo County Sheriff's Office forensic specialist Samantha Kranitz testified she analyzed the collected prints. Six of the prints were suitable for comparison. Of these, five did not belong to residents of the home; the sixth was inconclusive. One of the five prints was from the bathroom window and four were from the living room window. The Foster City Police Department provided her with the names of two possible suspects; the prints did not match either of them. She then entered the five prints into the Automated Fingerprinting Identification System (AFIS) and received a list of the 20 people whose prints most closely matched. She went through each of the 20 candidates and found that 19 of them did not match the latent prints. Appellant's prints

were the only set of prints that had similarities. She printed out appellant's fingerprint record and performed side by side comparisons. She concluded with 100 percent certainty that the five latent prints belonged to appellant. She testified there was no way to tell how the print was oriented on the surface. She stated, "there's no way to really say when prints can be deposited on a surface. The only timeframe you can give in a case like this on a window is theoretically anytime the subject has made those prints could have been deposited on that surface." She agreed "it is entirely possible for someone to touch a surface in some manner and not leave a latent print," and that "just because a police officer is not able to lift latent prints from various areas of a crime scene doesn't mean that a suspect didn't touch that area."

Cristina Clary testified she was in a dating relationship with appellant for four years, beginning in 2004 and ending in "[a]bout April" of 2008. She moved into her apartment in the Franciscan Apartments on March 1, 2008, and was living there in April 2008. She and appellant lived there together from March 2008 until she "kicked him out" in April or "perhaps" May 2008. They continued to spend time together socially until June 2008, when their relationship ended completely. During that time, appellant came to her apartment to pick her up but did not go inside. If they spent the night together, it was not at her place. She testified she had no recollection of appellant leaving and going out in the middle of the night when he was staying with her. She also had no recollection of him bringing a laptop computer home. She testified appellant did not tell her much about his private life and "never really involved [her] in too much into that or whatever he was doing." She testified she always enters and leaves the Franciscan Apartments by way of an entryway that is closest to her unit and that she was not familiar with - and had never walked on - the path that ran by the victims' apartment.

Foster City Police Officer Richard Colbachhini testified he went to the victims' apartment on a report of a residential burglary. He dusted the interior of the bathroom including the windowsill and "the entire window frame" and the front door area for prints but was unable to lift any latent prints. He also checked the desk "where the laptop computer was" but did not dust it because he "didn't find anything visually" when he used his light to look for prints. The window screens were also processed for prints but no prints were found. Colbachhini testified the bathroom window was 23 inches wide by 35 inches high and it appeared an adult would be able to fit through it. He also testified "there are a number of apartment buildings between where [Clary] lived and . . . where [the victims] live."

Foster City police detective Brian Tidwell testified that after being notified of the burglary, he searched for possible leads. He was working on other cases involving burglaries that had occurred in Foster City and was already investigating two individuals, whose names he submitted to the lab, thinking "something will come of the prints that Officer Beck lifted from

> the scene in this case." "[I]t was just a hunch," and "giving the crime lab the name[s] . . . wasn't rooted in anything more substantial."
>
> Tidwell received information from the crime lab that the prints found at the scene were identified as belonging to appellant. He interviewed appellant on July 30, 2008, after advising him of his Miranda [footnote omitted] rights. Appellant told Tidwell he had a girlfriend named Cristina who lived in Foster City, near the "Safeway grocery store on Hillsdale Boulevard." Tidwell testified that the Safeway to which appellant referred is about two and a half blocks east and about three blocks south of the Franciscan Apartments. When Tidwell asked appellant when he had last been in Foster City, appellant said he had not been there for about a year. Tidwell went to the victims' home and took photographs of the exterior. He testified that the bathroom and living room windows were on the south side of the home, about 10 to 15 feet apart from each other. He testified there was a pathway about eight feet away from the windows and that "you would have to actually proactively divert yourself from walking down that path to walk over to the living room window" and that "you would have to be even more aggressive to get up to the bathroom window.

People v. DeLeon, No. A124911, 2010 WL 2796452 at *1-*3 (Cal. Ct. App. July 15, 2010). Pet., Ex. 1 at 2-6.

B. Standard of Review

This Court may entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The writ may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme]

Order Denying Petitioner for Writ of Habeas Corpus; Denying Certificate of Appealability
G:\PRO-SE\SJ.EJD\HC.11\02121DeLeon_deny petition-coa.wpd
5

1  Court on a question of law or if the state court decides a case differently than [the]
2  Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529
3  U.S. 362, 412-13 (2000). The only definitive source of clearly established federal
4  law under 28 U.S.C. § 2254(d) is in the holdings (as opposed to the dicta) of the
5  Supreme Court as of the time of the state court decision. Williams, 529 U.S. at 412;
6  Brewer v. Hall, 378 F.3d 952, 955 (9th Cir. 2004). While circuit law may be
7  "persuasive authority" for purposes of determining whether a state court decision is
8  an unreasonable application of Supreme Court precedent, only the Supreme Court's
9  holdings are binding on the state courts and only those holdings need be
10 "reasonably" applied. Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir.), overruled
11 on other grounds by Lockyer v. Andrade, 538 U.S. 63 (2003).

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413. "Under § 2254(d)(1)'s 'unreasonable application' clause, . . . a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409. The federal habeas court must presume correct any determination of a factual issue made by a state court unless the petitioner rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

The state court decision to which Section 2254(d) applies is the "last reasoned decision" of the state court. See Ylst v. Nunnemaker, 501 U.S. 797, 803-04 (1991); Barker v. Fleming, 423 F.3d 1085, 1091-92 (9th Cir. 2005). When there

is no reasoned opinion from the highest state court considering a petitioner's claims, the court "looks through" to the last reasoned opinion. See <u>Ylst</u>, 501 U.S. at 805. Here, that opinion is from the California Court of Appeal.

Recently, the Supreme Court vigorously and repeatedly affirmed that under AEDPA, there is a heightened level of deference a federal habeas court must give to state court decisions. See <u>Hardy v. Cross</u>, 132 S. Ct. 490, 491 (2011) (per curiam); <u>Harrington v. Richter</u>, 131 S. Ct. 770, 783-85 (2011); <u>Felkner v. Jackson</u>, 131 S. Ct. 1305 (2011) (per curiam). As the Court explained: "[o]n federal habeas review, AEDPA 'imposes a highly deferential standard for evaluating state-court rulings' and 'demands that state-court decisions be given the benefit of the doubt.'" <u>Id.</u> at 1307 (citation omitted). With these principles in mind regarding the standard and limited scope of review in which this Court may engage in federal habeas proceedings, the Court addresses Petitioner's claim.

C.     Claim and Analysis

Petitioner claims that the evidence was insufficient to sustain a conviction of first degree burglary. Specifically, Petitioner asserts that the only evidence implicating his involvement in the crime were that his fingerprints were found on the outside of the victims' living room and bathroom windows. Petitioner argues, <u>inter alia</u>, that there was no evidence that he was seen committing the crime, that he possessed the stolen computer, or that he had no prior opportunity to touch the windows prior to the commission of the crime. Petitioner further contends that the Ninth Circuit's opinion in <u>Mikes v. Borg</u>, 947 F.2d 353 (9th Cir. 1991) controls this case.

The state appellate court rejected this claim. It stated that the five latent prints which were lifted from the "sliding" part of two windows of the victims' home, including the bathroom window, which was the point of entry, matched the fingerprints of Petitioner's with 100 percent certainty. Pet., Ex. 1 at 7. According to

Order Denying Petitioner for Writ of Habeas Corpus; Denying Certificate of Appealability
G:\PRO-SE\SJ.EJD\HC.11\02121DeLeon_deny petition-coa.wpd

state case law, when prints are found at the place of forced entry, and in an area that is normally inaccessible to others, there is a reasonable basis to infer that the prints were made at the time of the crime. Id. The state appellate court further found that: the evidence provided a reasonable inference that the bathroom window had been covered by a screen and the burglar removed the screen, leaving fingerprints on the sliding portion of the window as he entered the home; because the windows were in an area not readily accessible to the public, it was not likely that Petitioner innocently had touched those windows; and Petitioner falsely claimed that he had not been in Foster City for around one year, when his girlfriend testified that Petitioner had stayed with her several times around the time of the crime.

A federal court reviewing collaterally a state court conviction does not determine whether it is satisfied that the evidence established guilt beyond a reasonable doubt. Payne v. Borg, 982 F.2d 335, 338 (9th Cir. 1992). Nor does a federal habeas court in general question a jury's credibility determinations, which are entitled to near-total deference. Jackson v. Virginia, 443 U.S. 307, 326 (1979). Only if no rational trier of fact could have found proof of guilt beyond a reasonable doubt, may the writ be granted. Id. at 324. "[T]he only question under Jackson is whether that [jury] finding was so insupportable as to fall below the threshold of bare rationality." Coleman v. Johnson, 132 S. Ct. 2060, 2065 (2012). Further, sufficiency claims on federal habeas review are subject to a "twice-deferential standard." Parker v. Matthews, 132 S. Ct. at 2152 (2012) (per curiam). First, relief must be denied if, viewing the evidence in the light most favorable to the prosecution, there was evidence on which "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. (quoting Jackson, 443 U.S. at 324). Second, a state court decision denying a sufficiency challenge may not be overturned on federal habeas unless the decision was "objectively unreasonable." Id. (quoting Cavazos v. Smith, 132 S. Ct. 2, 4 (2011)).

Order Denying Petitioner for Writ of Habeas Corpus; Denying Certificate of Appealability
G:\PRO-SE\SJ.EJD\HC.11\02121DeLeon_deny petition-coa.wpd

Petitioner's reliance on Mikes is unavailing. Mikes is a pre-AEDPA case, and although it may be persuasive, it is not dispositive of this federal habeas petition. See Clark, 331 F.3d at 1069. Moreover, Mikes is distinguishable. In Mikes, the sole evidence against the defendant was the presence of his fingerprints on a turnstile post, the murder weapon. Mikes, 947 F.2d at 355. The turnstile was purchased by the victim approximately 4 months prior to the crime. Id. Out of 46 fingerprints, 16 were identifiable, and 6 belonged to Mikes. Id. The prosecution provided no evidence placing Mikes at the scene of the crime on any occasion, much less the around the time of the crime. The Ninth Circuit focused on whether the record demonstrated that Mikes' prints were placed on turnstile posts at the time of the murder. Id. at 357. The Court went on to say that a definition of the "relevant time" was "the time prior to the commission of the crime during which the defendant reasonably could have placed his fingerprints on the object in question and during which such prints might have remained on that object." Id. The Court concluded that the relevant time included the time when the turnstile was for sale in a public, readily accessible area, prior to the victim's purchase. Id. On the other hand, here, the evidence shows that the victims' windows were approximately eight feet away from the public walkway, and one would have to be "aggressive" to reach the bathroom window. Pet., Ex. 1 at 8. In addition, out of the six fingerprints lifted from the windows, one was inconclusive and the other five definitively belonged to Petitioner. Further, the pathway was not the closest to Petitioner's girlfriend's residence, making it more unlikely that Petitioner would have an innocent reason to have touched the victims' windows. Id. at 9. Finally, that Petitioner described his girlfriend's residence in Foster City, but in an area several blocks away from her actual complex, and further lied about when he was last at the complex are circumstantial evidence of guilt. Cf. Walters v. Maass, 45 F.3d 1355, 1358 (9th Cir. 1995) (noting that circumstantial evidence and inferences drawn from that evidence

may be sufficient to sustain a conviction).

Petitioner's intimation that his fingerprints could have been placed on those windows at an earlier time for some innocent reason is not enough to invalidate his conviction. See Taylor v. Stainer, 31 F.3d 907, 910 (9th Cir. 1994) (three hypotheses regarding petitioner's fingerprints which government failed to rebut was unsupported by evidence, and therefore insufficient to invalidate conviction). The prosecution need not affirmatively rule out every hypothesis except that of guilt. Wright v. West, 505 U.S. 277, 296-97 (1992) (quoting Jackson, 443 U.S. at 326).

Here, on this record, the Court cannot say that the state court's conclusion was an unreasonable application of Jackson. The petition is DENIED.

## CONCLUSION

After a careful review of the record and pertinent law, the Court concludes that the Petition for a Writ of Habeas Corpus must be **DENIED**.

Further, a Certificate of Appealability is **DENIED**. See Rule 11(a) of the Rules Governing Section 2254 Cases. Petitioner has not made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Nor has Petitioner demonstrated that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). Petitioner may not appeal the denial of a Certificate of Appealability in this Court but may seek a certificate from the Court of Appeals under Rule 22 of the Federal Rules of Appellate Procedure. See Rule 11(a) of the Rules Governing Section 2254 Cases.

The clerk shall terminate any pending motions, enter judgment in favor of Respondent, and close the file.

SO ORDERED.

DATED: 2/6/2013

EDWARD J. DAVILA
United States District Judge

Order Denying Petitioner for Writ of Habeas Corpus; Denying Certificate of Appealability
G:\PRO-SE\SJ.EJD\HC.11\02121DeLeon_deny petition-coa.wpd

**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT
FOR THE
NORTHERN DISTRICT OF CALIFORNIA

JOSE RUBEN DELEON,

    Petitioner,

v.

M.D. MCDONALD,

    Respondent.

Case Number: CV11-02121 EJD

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on   2/7/2013  , I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Jose Ruben Deleon
V-59273
High Desert State Prison
P. O. 3030
Susanville, CA 96127

Dated:   2/7/2013

Richard W. Wieking, Clerk
/s/ By: Elizabeth Garcia, Deputy Clerk